FILED

IN THE UNITED STATES DISTRICT COURT 2012 MAY -2  PM 4: 57
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
                    DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 1:12-CV-00329 |
| | § | |
| DARQUE TAN, LLC; SEGLER | § | |
| ENTERPRISES LTD.; ROBBIE SEGLER, | § | JURY DEMANDED |
| individually; TAN BIZ, LLC; MONICA | § | |
| JONES, individually; and JASON JONES, | § | |
| individually | § | |
| | § | |
| Defendants and | § | |
| Third-Party | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| JK PRODUCTS & SERVICES, INC.; JK | § | |
| CAPITAL, INC.; and NHSL, INC. | § | |
| | § | |
| Third-Party | § | |
| Defendants. | § | |

**THIRD-PARTY COMPLAINT OF DARQUE TAN, LLC; SEGLER
ENTERPRISES LTD, AND ROBBIE SEGLER, INDIVIDUALLY AGAINST JK
PRODUCTS & SERVICES, INC., JK CAPITAL, INC. AND NHSL, INC.**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Darque Tan, LLC; Segler Enterprises Ltd, and Robbie Segler,

individually, Third-Party Plaintiffs and Defendants in the above entitled and numbered

cause ("Third-Party Plaintiffs"), and pursuant to FED. R. CIV. P. 14(a), files this Third-

Party Complaint  seeking to join parties needed for a just adjudication of the cause of

action alleged in this case, and respectfully show the Court as follows:

**I.   REMOVAL**

AUSTIN 55846v.1

1.      This case was removed to federal court by Third-Party Plaintiffs on April 11, 2012, as a result of the Plaintiff's filing of its  Third Amended Original Petition and Application for Permanent Injunction filed in state court on March 14, 2012.

## II. PARTIES

2.      Third-Party Plaintiffs have already been served and made appearances in this cause.  They are Texas entities or individuals whose legal rights and status are affected by actions and decisions made by the Third-Party Defendants.

3.      Third Party Defendants are or may be liable for all or part of the Plaintiff's claims against Third Party Plaintiffs.

4.      Third-Party Defendant JK Products & Services, Inc., is a corporation duly organized and existing under the laws of the State of Arkansas, with its principal place of business in Little Rock, Arkansas.  It is not a resident of the State of Texas and does not maintain a regular place of business or a designated agent for service of process in this state, but it has been engaged in business in this state.  Therefore, substituted service on Third-Party Defendant JK Products & Services, Inc., is being  made by serving the Secretary of the State of Texas, Statutory Documents Section, Citations Unit, P.O. Box 12079, Austin, Texas  78711-2079, and forwarded to its registered agent in Arkansas, The Corporation Company at 124 West Capitol Ave, Suite 1900, Little Rock, AR 72201.

5.      Third Party Defendant JK Capital, Inc., is a corporation duly organized and existing under the laws of the State of Arkansas, with its principal place of business in Little Rock, Arkansas.  It is not a resident of the State of Texas and does not maintain a regular place of business or a designated agent for service of process in this state, but it

- 2 -

has been engaged in business in this state.  Therefore, substituted service on Third-Party Defendant JK Capital, Inc., is being  made by serving the Secretary of the State of Texas, Statutory Documents Section, Citations Unit, P.O. Box 12079, Austin, Texas 78711-2079, and forwarded to its registered agent in Arkansas, The Corporation Company at 124 West Capitol Ave, Suite 1900, Little Rock, AR 72201.

6.    Third Party Defendant NHSL, Inc., is a corporation duly organized and existing under the laws of the State of Idaho, with its principal place of business in Boise, Idaho.  It is not a resident of the State of Texas and does not maintain a regular place of business or a designated agent for service of process in this state, but it has been engaged in business in this state.  Therefore, substituted service on Third-Party Defendant NHSL, Inc., is being  made by serving the Secretary of the State of Texas, Statutory Documents Section, Citations Unit, P.O. Box 12079, Austin, Texas 78711-2079, and forwarded to its registered agent in Idaho, Dwayne Strawn at 875 McGregor Ct, Boise, ID  83705.

### III. VENUE AND JURISDICTION

7.    Jurisdiction and venue of the original suit are proper in this Court. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff has raised a federal question in its Third Amended Original Petition and Application for Permanent Injunction by asserting federal causes of action against Third Party Plaintiffs. This Court also has subject matter jurisdiction over Third-Party Plaintiffs' claims against Third-Party Defendants because the Third Party Defendants are or may be liable for all or part of the Plaintiff's claims against Third Party Plaintiffs.  These claims raised by Plaintiff should have been raised against the Third-Party Defendants.  Joinder of Third-Party Defendants in this cause is proper because the legal authority and practices of the

- 3 -

Third Party Defendants are integral to Plaintiff's claims and Third-Party Plaintiffs' defenses. The existing parties cannot obtain complete relief in the absence of the Third-Party Defendants, and this Court will be asked to make legal rulings which will directly impact the operations of the these Third-Party Defendants.

8.     This court has personal jurisdiction over each of the Third-Party Defendants because they have sufficient specifically affiliating contacts with this jurisdiction through their transaction of the business at issue herein. In addition they have sufficient generally affiliating contacts through their business activities in this jurisdiction.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 124(d)(1) because this is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a). No previous application has been made for the relief requested herein, because new causes of action were raised in the Plaintiff's Third Amended Petition filed. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district. 28 U.S.C. § 1391(b)(2)

## IV. FACTS

10.     Plaintiff has not asserted any consumer harm. In fact, Plaintiff has dropped all of its allegations of alleged consumer harm. *Compare* Plaintiff's Third Amended Original Petition to Plaintiff's Second Amended Original Petition at ¶12.1. Nevertheless, Plaintiff now sues all of the Third-Party Plaintiffs for alleged violations of the Federal Food, Drug and Cosmetic Act ("FFDCA"), Texas Health & Safety Code ("THSC"), and the Texas Deceptive Trade Practices Act.

AUSTIN 55846v.1

11.     Third Party Defendant JK Products & Services, Inc., is the manufacturer of the Ergoline Beauty Angel Natural Collagen Stimulation Stand-up Beds ("Beauty Angels").   Third Party Defendant JK Capital, Inc. is a related company which leased numerous Beauty Angels to Third Party Plaintiff Segler Enterprises, Inc. (collectively, the "JK Third Party Defendants").  Plaintiffs erroneously assert alleged violations of the FFDCA (and other statutes) against all of the Third Party Plaintiffs that can only be asserted against the Third Party Defendants.  *See* Exhibit A, Plaintiff's Third Amended Original Petition and Application for Permanent Injunction.

12.     Plaintiff alleges that the Beauty Angels are designated by the federal Food & Drug Administration ("FDA") as Class III devices under section 513(f) of the FFDCA. *Id.* at ¶ 11.12.  Plaintiff alleges that because the Beauty Angels are Class III devices, the Third-Party Plaintiffs were required to obtain premarket clearance from the FDA or exemption from the FDA "before they can be marketed and sold in the United States pursuant to section 515 of the FFDCA, 21 U.S.C. §360e." *Id.* at ¶¶11.12, 11.14. Plaintiffs allege that no such FDA premarket clearance or exemption was obtained. *Id.* However, Third Party Plaintiffs do not , manufacture, market, or sell the Beauty Angel. Any such obligation to obtain FDA premarket clearance or exemption and any resultant liability for failure to do so would be that of the JK Third Party Defendants.   Plaintiffs further allege that as a result of the failure to obtain FDA premarket clearance or exemption, Third Party Plaintiffs improperly introduced "misbranded" and "adulterated" Beauty Angels into commerce. *Id.* at ¶¶11.13, 11.14.  However, any such obligation and resultant liability would be that of the JK Third Party Defendants.  Plaintiffs further allege that as a result of the failure to obtain FDA premarket clearance or exemption, the

Beauty Angels were "falsely advertised" by Third Party Plaintiffs. *Id.* at ¶11.15. However, any such obligation and resultant liability would be that of the JK Third Party Defendants.

13.    Plaintiff has alleged that Third-Party Plaintiffs have not applied for and obtained a license from the Texas Department of State Health Services for each place of business that a "food" "manufacturer" operates in Texas. *Id.* at ¶ 11.8. Plaintiff alleges that Third-Party Plaintiffs have manufactured food, specifically Vitamin D supplements, without a license in Texas, in violation of Section 431.021(y) of the Texas Health and Safety Code. *Id.* at ¶ 11.9. Plaintiff also alleges that Third-Party Plaintiffs have violated Section 431.021(a) of the Texas Health and Safety Code because the Vitamin D supplements were "misbranded" because the labeling was "false and misleading". *Id.* at ¶ 11.10. Plaintiff further alleges that this "misbranded food" was introduced into commerce by Third Party Plaintiffs. *Id.*

14.    However, Vitamin D Supplements are not "food" under the applicable law. Further, Third Party Defendants did not manufacture the Vitamin D supplements at issue. These were manufactured by Third Party Defendant NHSL, Inc. Therefore, any obligation and resultant liability for Plaintiff's claims, if any, would be that of Third Party Defendant NHSL, Inc. In addition, most, if not all, of the Vitamin D supplements at issue were not sold by Third Party Defendants. Therefore, Third Party Defendants can not be held liable for those Vitamin D Supplements.

## V.    CAUSES OF ACTION

15.    Third-Party Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

16.     Third-Party Plaintiffs deny the allegations set forth in Plaintiff's Third Amended Original Petition and Application for Permanent Injunction.   However, if a judgment is sought or obtained on any of the claims, then Third Party Plaintiffs are entitled to the following recovery from Third Party Defendants.

17.     All conditions precedent to bringing these causes of action have been satisfied.

### A. <u>JK Third Party Defendants</u>

#### i.      <u>Contribution &/Or Indemnity</u>

18.     If a judgment is sought or obtained against Third Party Plaintiffs on any of the claims regarding the Beauty Angels, then Third Party Plaintiffs are entitled to contribution and/or indemnity from the JK Third Party Defendants.   These claims for contribution and/or indemnity include, but are not limited to,  any and all sums for which one or more Third Party Plaintiffs  may be adjudged liable, including pre- and post-judgment interest as provided by law, attorneys' fees, costs of suit, and such other further relief to which Third-Party Plaintiffs may be entitled.

#### ii.      <u>Breach of Contract</u>

19.     Third Party Plaintiff Segler Enterprises has advised the JK Third Party Defendants of the Plaintiff's allegations regarding the Beauty Angels and has requested that  the appropriate JK Third Party Defendant return Plaintiff Segler Enterprises money paid for the lease of the Beauty Angels and, in addition, remove the Beauty Angels from its places of business.  The JK Third Party Defendants have refused to do so.  If the Plaintiff's allegations regarding the Beauty Angels are true, then Third Party Defendant JK Capital, Inc. breached its contract with Third Party Plaintiff Segler

- 7 -

Enterprises.   Third Party Plaintiff Segler Enterprises would be entitled to recover its actual damages and reasonable attorneys fees and expenses for bringing this claim.

### iii.  Fraudulent Inducement

20.     Third Party Plaintiff Segler Enterprises has advised the JK Third Party Defendants of the Plaintiff's allegations regarding the Beauty Angels and has requested that  the appropriate JK Third Party Defendant return Plaintiff Segler Enterprises money paid for the lease of the Beauty Angels and, in addition, remove the Beauty Angels from its places of business.  The JK Third Party Defendants have refused to do so.  If the Plaintiff's allegations regarding the Beauty Angels are true, then Third Party Defendant JK Capital, Inc. fraudulently induced Third Party Plaintiff Segler Enterprises into entering into its contract with Third Party Defendant JK Capital, Inc.   Specifically, the JK Defendants made representations to Third Party Plaintiff Segler Enterprises regarding the advantages of using the Beauty Angels and the legality of using the Beauty Angels. If Plaintiff's allegations regarding the Beauty Angels are true, then the JK Third-Party Defendants  made material misrepresentations of fact which were relied upon by Third-Party Plaintiff Segler Enterprises to its  harm and detriment. Further, the JK Third-Party Defendants concealed material facts from Third-Party Plaintiff Segler Enterprises  to its harm and detriment. But for these misrepresentations, Third-Party Plaintiff Segler Enterprises would not have entered into an Agreement to lease the Beauty Angels.  .If Plaintiff's allegations regarding the Beauty Angels are true, then Third-Party Plaintiff Segler Enterprises is entitled to recover all of its  actual damages resulting from the fraudulent inducement, reasonable attorneys fees and expenses for bringing this claim. as well as exemplary damages for the conduct of the JK Third Party Defendants.

- 8 -

### iv.  DTPA

21.     If Plaintiff's allegations regarding the Beauty Angels are true, then The JK Third-Party Defendants 1 violated the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS & COM. C. Sec. 17.41, et seq. (the "Act").  Third-Party Plaintiff Segler Enterprises is a  "consumers" as required to bring a cause of action under the Act. If Plaintiff's allegations regarding the Beauty Angels are true, then The JK Third-Party Plaintiffs made, undertook, and committed false, misleading, or deceptive acts or practices, including:

    a)    causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of services, as provided under Section 17.46(b)(2) of the Act;

    b)    representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, as provided under Section 17.46(b)(5) of the Act; and

    c)    failing to disclose information concerning goods which was known at the time of the transaction with the intention to induce the consumer to enter into a transaction into which the consumer would not have entered had the information been disclosed, as provided under Section 17.46(b)(23) of the Act.

Third-Party Plaintiff Segler Enterprises  herein seeks from the JK Third-Party Defendants all of their actual damages resulting from violations of the Act, as well as additional damages, costs of court, and attorneys' fees, as provided for by the Act.

### v.  Injunctive Relief

22.     Plaintiff has also requested injunctive relief against Third Party Plaintiffs for the alleged violations, as outlined above and incorporated herein.   Third-Party Plaintiffs deny that injunctive relief is appropriate.   However, should Plaintiff be entitled to injunctive relief, than such injunctive relief would be more appropriately imposed on the JK Third Party Defendants.

**B.  NHSL, Inc.**

**i.     Contribution &/Or Indemnity**

23.     If  a judgment is sought or obtained against Third Party Plaintiffs on any of the claims regarding the Vitamin D Supplements, then Third Party Plaintiffs are entitled to contribution and/or indemnity from Third Party Defendant NHSL, Inc.  These claims for contribution and/or indemnity include, but are not limited to,  any and all sums for which one or more Third Party Plaintiffs  may be adjudged liable, including pre- and post-judgment interest as provided by law, attorneys' fees, costs of suit, and such other further relief to which Third-Party Plaintiffs may be entitled.

**ii.     Breach of Contract**

24.     If the Plaintiff's allegations regarding the Vitamin D Supplements are true, then Third Party Defendant NHSL, Inc. breached its contract with Third Party Plaintiff Segler Enterprises by selling it product that it could not use in Texas.  Third Party Plaintiff Segler Enterprises would thus be entitled to recover its actual damages and reasonable attorneys fees and expenses for bringing this claim.

**iii.  Fraudulent Inducement**

- 10 -

25.      If the Plaintiff's allegations regarding the Vitamin D Supplements are true, then Third Party Defendant NHSL, Inc. fraudulently induced Third Party Plaintiff Segler Enterprises into entering into its contract with Third Party Defendant NHSL, Inc. Specifically, Third Party Defendant NHSL, Inc. made representations to Third Party Plaintiff Segler Enterprises regarding the advantages of the Vitamin D Supplements and the legality of using the Vitamin D Supplements.   If Plaintiff's allegations regarding the Vitamin D Supplements are true, then Third Party Defendant NHSL, Inc. made material misrepresentations of fact which were relied upon by Third-Party Plaintiff Segler Enterprises to its   harm and detriment. Further, Third Party Defendant NHSL, Inc. concealed material facts from Third-Party Plaintiff Segler Enterprises  to its  harm and detriment. But for these misrepresentations, Third-Party Plaintiff Segler Enterprises would not have entered into an Agreement to buy the Vitamin D Supplements.   .If Plaintiff's allegations regarding the Vitamin D Supplements are true, then Third-Party Plaintiff Segler Enterprises is entitled to recover all of its  actual damages resulting from the fraudulent inducement, reasonable attorneys fees and expenses for bringing this claim. as well as exemplary damages for the conduct of Third Party Defendant NHSL, Inc.

### iv. DTPA

26.      If Plaintiff's allegations regarding the Vitamin D Supplements are true, then Third Party Defendant NHSL, Inc. violated the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS & COM. C. Sec. 17.41, et seq. (the "Act").  Third-Party Plaintiff Segler Enterprises is a  "consumer" as required to bring a cause of action under the Act.  If Plaintiff's allegations regarding the Vitamin D Supplements are true,

- 11 -

then Third Party Defendant NHSL, Inc. made, undertook, and committed false, misleading, or deceptive acts or practices, including:

a)     causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of services, as provided under Section 17.46(b)(2) of the Act;

b)     representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, as provided under Section 17.46(b)(5) of the Act; and

c)     failing to disclose information concerning goods which was known at the time of the transaction with the intention to induce the consumer to enter into a transaction into which the consumer would not have entered had the information been disclosed, as provided under Section 17.46(b)(23) of the Act.

Third-Party Plaintiff Segler Enterprises herein seeks from Third Party Defendant NHSL, Inc. its actual damages resulting from violations of the Act, as well as additional damages, costs of court, and attorneys' fees, as provided for by the Act.

### v. Injunctive Relief

27.     Plaintiff has also requested injunctive relief against Third Party Plaintiffs for the alleged violations, as outlined above and incorporated herein. Third-Party Plaintiffs deny that injunctive relief is appropriate. However, should Plaintiff be entitled to injunctive relief, than such injunctive relief would be more appropriately imposed on Third Party Defendant NHSL, Inc.

## VI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Third-Party Plaintiffs respectfully requests that summons issue and that upon final hearing thereof, the Court issues final judgment denying the relief sought by Plaintiff.  However, should the Court intend to award the relief sought by Plaintiff, it should not be awarded against Third  Party Plaintiffs but, instead, against Third Party Defendants. Third-Party Plaintiffs further seek to recover all of their costs of court, expenses, and reasonable and necessary attorneys' fees, and such other and further relief to which they may be justly entitled.

## VII.    JURY DEMAND

Third-Party Plaintiffs demand trial by jury of the disputed factual issues in this action.


Respectfully submitted,


By:    _____
Edward D. ("Ed") Burbach
State Bar No. 03355250
ph:  (512) 542-7070
fax:  (512) 542-7270
Kristina W. Silcocks
State Bar No. 00795930
GARDERE WYNNE SEWELL LLP
600 Congress Avenue, Suite 3000
Austin, Texas  78701


COUNSEL        FOR        THIRD-PARTY
PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Third-Party Plaintiffs' Third-Party Complaint has been served upon the following counsel of record on this the 2nd day of May, 2012:

**VIA CMRRR NO.  71969008904009118325**
Jodie Scivetti
Assistant Attorney General
Joyce Wein Iliya
Assistant Attorney General
Consumer Protection & Public Health Division
1412 Main Street, Suite 810
Dallas, TX  75202



_____
Edward D. ("Ed") Burbach



RECEIVED
MAR 1 6 2012
By_____

Filed
12 March 14 A11:04
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GV-08-002596

NO.  D-1-GV-08-002596

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff** | § | |
| v. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| DARQUE TAN, LLC; SEGLER | § | |
| ENTERPRISES LTD.; ROBBIE | § | |
| SEGLER, individually; TAN BIZ, LLC; | § | |
| MONICA JONES, individually; and | § | 201ST JUDICIAL DISTRICT |
| JASON JONES, individually, | § | |

**Defendants.**

### PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION AND APPLICATION FOR PERMANENT INJUNCTION

TO THE HONORABLE DISTRICT JUDGE:

COMES NOW, the STATE OF TEXAS (Plaintiff), acting by and through the Attorney General of Texas, GREG ABBOTT, and files this its Third Amended Original Petition complaining of DARQUE TAN, LLC; SEGLER ENTERPRISES LTD.; ROBBIE SEGLER, individually; TAN BIZ, LLC; MONICA JONES, individually; and JASON JONES, individually (Defendants). For cause of action, the State respectfully shows the following:

### I.  DISCOVERY CONTROL PLAN

1.1  The discovery in this case is intended to be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4.

### II. AUTHORITY

2.1    This action is brought by Attorney General Greg Abbott, through his Consumer Protection Division, in the name of the STATE OF TEXAS and in the public interest under the

*State v. Darque Tan, LLC, et al.*
**Plaintiff's Third Amended Original Petition**                                    1



**EXHIBIT**

A
_____

authority granted him by §431.047, and §431.0585 of the Texas Food, Drug and Cosmetic Act, TEX. HEALTH & SAFETY CODE ANN. §431.001 et seq. ("TFDCA"). Section 431.047 authorizes the Attorney General to seek injunctive relief under certain circumstances and recover any costs and attorney fees incurred in obtaining that relief. Section 431.0585 authorizes the Attorney General, after a referral from the Commissioner, to seek civil penalties in favor of the State for any violation of §431.021 of the TFDCA and regulations pursuant to this Act.

2.2     This action is brought by Attorney General Greg Abbott, through his Consumer Protection Division, in the name of the STATE OF TEXAS and in the public interest under the authority granted him by §17.47 of the Texas Deceptive Trade Practices - Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §17.41 et seq. ("DTPA"), upon the grounds that Defendants have engaged in false, misleading, or deceptive acts or practices in the course of trade and commerce as defined in, and declared unlawful by §§17.46(a) and (b) of the DTPA.

2.3     This action is brought by Attorney General Greg Abbott, through his Consumer Protection Division, in the name of the STATE OF TEXAS and in the public interest under the authority granted him by §145.0121 of the Tanning Facility Regulation Act, TEX. HEALTH & SAFETY CODE ANN. §145.001 et seq. Section 145.0121 of the Tanning Facility Regulation Act specifically provides that the Attorney General may file suit, after a request from the Commissioner, to recover a civil penalty and for injunctive relief for violations under this Act.

### III. DEFENDANTS

3.1  Defendant **DARQUE TAN, LLC** is a Texas corporation with headquarters in Houston, Texas. Darque Tan, LLC is the General Partner of Segler Enterprises, LTD. It may be

*State v. Darque Tan, LLC, et al.*
**Plaintiff's Third Amended Original Petition**                                          2

served through its **Registered Agent: Nicholas J. Lanza, 5177 Richmond, Suite 850, Houston, Texas 77056.**

3.2  Defendant **SEGLER ENTERPRISES, LTD.** is a Texas corporation d/b/a Darque Tan, with its headquarters in Houston, Texas.  It may be served through its **Registered Agent: Nicholas J. Lanza, 5177 Richmond, Suite 850, Houston, Texas 77056.**

3.3  Defendant **ROBBIE SEGLER** is the Director, President, and Secretary of Darque Tan, LLC, and resides in Texas.  He may be served at 5407 China Doll, Houston, Texas  77041.

3.4 Defendant **TAN BIZ, LLC** is a Texas Corporation d/b/a Darque Tan in the San Antonio area.  It may be served through its **Registered Agent: Wilson, Bellamy, Brown & Wilson LLP at 3308 Broadway, Suite 300, San Antonio, Texas 78209.**

3.5  Defendant **MONICA JONES** is an individual residing in Texas and is a manager of Tan Biz, LLC.  Monica Jones may be served at: 5002 Roundtable, San Antonio, Texas 78218.

3.6  Defendant **JASON JONES** is an individual residing in Texas and is a manager of Tan Biz, LLC.   Jason Jones may be served at: 5002 Roundtable, San Antonio, Texas 78218.

#### IV. VENUE

4.1  Under Texas Health & Safety Code sections 145.0121(d) and 431.0585(d), venue is proper in Travis County, Texas.

#### V. PUBLIC INTEREST

5.1  Because Plaintiff State of Texas has reason to believe that Defendants have engaged in, and will continue to engage in, the unlawful practices set forth below, Plaintiff has reason to believe Defendants have caused adverse effects to legitimate business enterprises which lawfully

conduct trade and commerce in this State.  The Consumer Protection Division of the Office of

the Attorney General believes that these proceedings are in the public interest.

## VI. TRADE AND COMMERCE

**6.1**  Defendants have, at all times described below, engaged in conduct which constitutes

"trade" and "commerce" as those terms are defined by DTPA section 17.45(6).

## VII. ACTS OF AGENTS

**7.1**  Whenever in this Petition it is alleged that any Defendants did any act, it is meant

that:

**A.**  Defendants performed or participated in the act; or

**B.**  Defendants' officers, agents, or employees performed or participated in the act on

behalf of and under the authority of the Defendants.

## VIII. NOTICE BEFORE SUIT

**8.1**  At least seven days prior to filing suit, Defendants were notified of the unlawful

conduct alleged herein.

## IX. NATURE OF DEFENDANTS' OPERATIONS

**Tanning Devices**

**9.1**  Defendants operate tanning facilities providing indoor tanning services to the public

within the State of Texas and Nationwide.   Defendants' tanning facilities are regulated under the

Tanning Facility Regulation Act, TEX. HEALTH & SAFETY CODE §§ 145.001-145.016 (Vernon

2001 & Supp. 2008). See specifically TEX. HEALTH & SAFETY CODE §§ 145.002(8). Defendants'

tanning devices are also regulated under the Texas Food, Drug & Cosmetic Act, TEX. HEALTH &

*State v. Darque Tan, LLC, et al.*
**Plaintiff's Third Amended Original Petition**                                    4

SAFETY CODE §§ 431.001 - 431.415 (Vernon 2001 & Supp. 2008).

9.2   Defendants use ultraviolet lamps[1] for tanning to provide tanning services to consumers.  Ultraviolet lamps for tanning are classified in 21 C.F.R. § 878.4635  ("ultraviolet lamp for tanning is a device . . . intended to . . . tan the skin.") and are solely classified for tanning the skin, nothing more.  The Federal Food & Drug Administration ("FDA") classifies devices based on the intended use, as presented by the device manufacturer.

9.3   The FDA is solely responsible for classifying and approving devices after they determine whether they are safe and effective for their stated intended uses.  The State, its agencies, and its courts cannot approve or authorize use of a device for an intended use different from that authorized by FDA.[2]  Therefore, ultraviolet lamps for tanning are limited to the intended use of tanning the skin.

9.4   Defendants represent and advertise that the use of their tanning devices results in health or medical benefits.   Some examples of claims made by the Defendants include:

- claiming that using their devices increases the amount of vitamin D produced by the users;

- claiming that five minutes in a tanning bed will produce as much vitamin D as is

---

[1]By classification, ultraviolet lamps that produce ultraviolet radiation within a specific limit (21 C.F.R. §1040.20(11)) are intended for use in any sunlamp product designed to incorporate one or more ultraviolet lamps and intended for irradiation of any part of the human body to induce skin tanning (21 C.F.R. §1040.20(9)).

[2] Section 521 of the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. §360k(a), prohibits a state from establishing or continuing in effect any requirement (1) which is different from, or in addition to any requirement applicable under the FFDCA to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the FFDCA.

*State v. Darque Tan, LLC, et al.*
**Plaintiff's Third Amended Original Petition**                                    5

found in 20 cans of sardines and 40 glasses of milk;

- claiming that "UVB from tanning converts cholesterol into vitamin D;"

- using the phrase "Vitamin Darque" in promotional cards in which the Vitamin D portion of the phrase is in a different shade and font than the rest of the phrase; and

- linking websites containing articles on Vitamin D and making health and medical benefits claims for tanning to Defendants' website.

9.5   Defendants DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and ROBBIE SEGLER, individually,  have made the following additional claims:

- posting billboards which stated, "Get healthy, Get Darque, Get Vitamin D;"

- hanging "health claims" signs in their facilities which state: "As a tanning salon, our regulations prohibit us making or confirming any kind of health claims.  To investigate the connection between vitamin D deficiency and disease, we recommend you Google™ vitamin D and/or consult a physician qualified in this field.  What we can tell you is that tanning beds are one of the most reliable and controlled sources of natural vitamin D on the planet."

- using the phrases "Vitamin Delivery," "Vitamin Diva," and "Vitamin Darque" in which the Vitamin D portion of the phrases are in a different shade and font than the rest of the phrase in posters and promotional cards; and

- placing copies of a magazine containing articles on Vitamin D on their tanning beds.

**9.6**  Defendants make the health or medical claim that indoor tanning increases the user's intake of vitamin D and that increased levels of vitamin D have been shown to reduce the incidence or risk of cancer.  Defendants then make health or medical claims that using their tanning devices increases vitamin D levels, thereby reducing the user's risk of developing cancer. Defendants also make the health or medical claim that indoor tanning reduces the risk of breast cancer.  Additionally, Defendants  DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and ROBBIE SEGLER's agents have specifically made the following health or medical claims in comments to undercover news investigators: (1) "[p]eople that have high levels of vitamin D . . . are not as likely to get cancer," and (2) "[s]o would you be more worried about the skin cancer on your arm and being able to have it laser cut out . . . or would you rather have ovarian cancer that you can't get rid of and . . . people die from."

**9.7**  Defendants also claim that by using their tanning beds one can safely achieve and maintain a tan.

**9.8**  Defendants' tanning devices have **not** been approved by the FDA for either delivering doses of vitamin D or reducing risk of cancer.  Defendants cannot legally make claims of delivering doses of vitamin D or reducing risk of cancer as these claims change the intended use of the devices from the FDA approved use for tanning of the skin.  Consequently, Defendants cannot legally use or advertise the use of their tanning devices for any purpose other than tanning the skin.

**Vitamin D supplements**

**9.9**   At inspections of DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and

ROBBIE SEGLER's various facilities, the Texas Department of State Health Services found

Defendants advertising, giving away and/or offering to sell Vitamin D supplements. The

supplements are advertised, presented and provided to consumers in bottles labeled with Darque

Tan's name.

**Red Light Therapy**

**9.10**    At inspections of DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and

ROBBIE SEGLER's various facilities, the TDSHS found Defendants advertising and providing

red light therapy utilizing Ergoline Beauty Angel Natural Collagen Stimulation Stand-up Beds.

Defendants  DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and ROBBIE SEGLER,

individually, advertise the red light therapy for "stress relief," "skin rejuvenation," and "anti-

aging."

**9.11**    Based on claims made in the instruction/user manuals for the Ergoline Beauty

Angel Natural Collagen Stimulation Stand-up Beds, TDSHS determined that the intended uses of

the beds were, among other things,  the:

- stimulation of collagen and elastin production and vitalization of the skin;

- increase of resistance to environmental and stress-related influences;

- detoxification of the skin and encouragement of cell regeneration;

- increase of the skin's oxygen and moisture levels;

- reduction of pigmentation and liver spots;

- reduction of swelling and dark rings around the eyes;

- substantial reduction of the wrinkles in facial and neckline areas; and

- effective and long-term reduction of skin aging.

**9.12**   TDSHS determined that the Ergoline  Beauty Angel Natural Collagen Stimulation Stand-up Bed is a device under §431.002(13) of the Texas Food, Drug and Cosmetic Act, TEX. HEALTH & SAFETY CODE because the device is intended for use in the cure, mitigation, treatment, or prevention of disease in man or is intended to affect the structure or any function of the body of man.   TDSHS determined that the Ergoline Beauty Angel Natural Collagen Stimulation Stand-up Bed is a class III device which requires an approved application pursuant to section 515 of the FFDCA, 21 U.S.C. §360e, before it can be marketed and sold in the United States.   TDSHS determined that there is no evidence that the Ergoline Beauty Angel Natural Collagen Stimulation Stand-up Bed has been granted marketing clearance pursuant to a FDA approved application or is otherwise exempt from the requirement.

## X. FALSE, MISLEADING OR DECEPTIVE ACTS

**10.1**  Defendants, as alleged above and detailed below, have in the course of trade and commerce engaged in practices declared unlawful by the DTPA.  Such acts include:

**A.**  Engaging in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce, in violation of DTPA section 17.46(a);

**B.**  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have, in violation of DTPA section 17.46(b)(5); and

**C.**  Failing to disclose information concerning goods or services which was known at the

time of the transaction if such failure to disclose such information was intended to induce the

consumer into a transaction into which the consumer would not have entered had the information

been disclosed, in violation of DTPA section 17.46(b)(24).

## XI.  TEXAS HEALTH & SAFETY CODE VIOLATIONS

**11.1**  Ultraviolet lamps for tanning are "tanning devices" pursuant to section 145.002(7)

of the Texas Health & Safety Code.  Tanning devices under the Tanning Facility Regulation Act

are also defined as devices under section 431.002(13) of the Texas Health and Safety Code.

**11.2**  Defendants' tanning devices are also regulated under the Texas Food, Drug &

Cosmetic Act, TEX. HEALTH & SAFETY CODE §§ 431.001 - 431.415 (Vernon 2001 & Supp.

2008). Under Texas Health & Safety Code section 431.002(13), a device is an instrument,

apparatus, implement, machine, contrivance or other similar article, that is intended for use in the

diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of

disease in man or intended to affect the structure or any function of the body.

**11.3**  Texas Health & Safety Code section 145.007 (Vernon 2001) prohibits a tanning

facility from claiming or distributing promotional materials claiming that using a tanning device

will result in medical or health benefits.  Defendants have violated this provision by claiming

and/or distributing materials claiming that using a tanning device increases the users intake of

vitamin D.  Defendants have further violated this provision by stating that the use of their tanning

devices will reduce the consumer's incidence or risk of cancer.

**11.4**  Texas Health & Safety Code section 431.182(a) states that an advertisement of a

device is false if it is false or misleading in any particular.  Defendants' claims that its tanning

devices deliver doses of vitamin D or reduce the risk of cancer are false or misleading in that the FDA has only approved tanning devices for tanning the skin and not for these other intended uses. Therefore, Defendants' claims constitute false advertisements under Texas Health & Safety Code section 431.182(a).

11.5  Defendants' claims that their tanning devices deliver doses of vitamin D or reduce the risk of cancer violate Texas Health & Safety Code section 431.021(f) which prohibits the dissemination of any false advertisement.

11.6  Section 431.112(e) of the Texas Health & Safety Code states that a device shall be deemed to be misbranded unless its labeling bears adequate directions for use. Adequate directions for use cannot be written for Defendants' advertised uses of the tanning devices since these devices are not approved to deliver doses of vitamin D or reduce the risk of cancer. Because adequate directions for use cannot be written for Defendants' tanning devices for these unapproved uses, these devices are deemed misbranded pursuant to section 431.112(e) of the Texas Health & Safety Code. Defendants' use of such misbranded devices to provide tanning of the skin result in the introduction into commerce of misbranded devices. Defendants have violated section 431.021(a) of the Texas Health & Safety Code which prohibits the introduction of misbranded devices into commerce and section 431.021(b) of the Texas Health & Safety Code which prohibits the misbranding of devices in commerce.

11.7  Texas Health & Safety Code section 145.007 (Vernon 2001) prohibits a tanning facility from claiming or distributing promotional materials claiming that using a tanning device is safe. Defendants have violated this provision by claiming and/or distributing materials

claiming that one can safely achieve and maintain a tan through the use of tanning devices.

**11.8**   Section 431.222(a) of the Texas Health & Safety Code states that a food manufacturer must apply for and obtain a license from, and pay a license fee to, the Texas Department of State Health Services for each place of business that the food manufacturer operates within Texas.  Food manufacturer is defined in section 431.221(2) to include those who represent themselves as responsible for the purity and proper labeling of an article of food by labeling the food with the person's name and address.  Section 431.021(y) of the Texas Health & Safety Code prohibits manufacturing food within Texas without obtaining a license.

**11.9**   Defendants DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and ROBBIE SEGLER violate section 431.021(y) of the Texas Health & Safety Code by manufacturing Vitamin D supplements without a license from TDSHS.

**11.10**   Section 431.082(a) of the Texas Health & Safety Code states that a food is misbranded if its labeling is false or misleading in any particular or fails to conform with the requirements of section 431.181 of the Texas Health & Safety Code which addresses fair packaging and labeling.  Section 431.021(a) of the Texas Health & Safety Code prohibits the introduction or delivery for introduction of any misbranded food into commerce. Defendants DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and ROBBIE SEGLER violate section 431.021(a) by failing to follow the requirements for the supplement facts panel.

**11.11** Defendants DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and ROBBIE SEGLER'S  Ergoline Beauty Angel Natural Collagen Stimulation Stand-up Beds are regulated under the Texas Food, Drug & Cosmetic Act, TEX. HEALTH & SAFETY CODE §§ 431.001 -

431.415 (Vernon 2001 & Supp. 2008) as devices.  Under Texas Health & Safety Code section

431.002(13), a device is an instrument, apparatus, implement, machine, contrivance or other

similar article, that is intended for use in the diagnosis of disease or other conditions, or in the

cure, mitigation, treatment, or prevention of disease in man or intended to affect the structure or

any function of the body.

　　　　11.12  Defendants DARQUE TAN, LLC; SEGLER ENTERPRISES LTD. and ROBBIE

SEGLER'S Ergoline Beauty Angel Natural Collagen Stimulation Stand-up Beds are class III

devices, as classified by section 513(f) of the FFDCA, 21 U.S.C. §360c(f), which require an

approved application or an exemption from an approved application requirement before they can

be marketed and sold in the United States pursuant to section 515 of the FFDCA, 21 U.S.C.

§360e.

　　　　11.13　Section 431.112(e) of the Texas Health & Safety Code states that a device shall be

deemed to be misbranded unless its labeling bears adequate directions for use. Adequate

directions for use cannot be written for the Ergoline Beauty Angel Natural Collagen Stimulation

Stand-up Beds since these devices have not been approved for marketing in the United States.

Because adequate directions for use cannot be written for Defendants' DARQUE TAN, LLC;

SEGLER ENTERPRISES LTD. and ROBBIE SEGLER'S Ergoline Beauty Angel Natural

Collagen Stimulation Stand-up Beds,  these devices are deemed misbranded pursuant to section

431.112(e) of the Texas Health & Safety Code.  Defendants' use of such misbranded devices

result in the introduction into commerce of misbranded devices.   Defendants have violated

section 431.021(a) of the Texas Health & Safety Code which prohibits the introduction of

misbranded devices into commerce, section 431.021(b) of the Texas Health & Safety Code which prohibits the misbranding of devices in commerce, and section 431.021(c) of the Texas Health & Safety Code which prohibits the receipt in commerce of misbranded devices.

**11.14**  Section 431.111(f)(1)(B) of the Texas Health & Safety Code states that a device shall be deemed to be adulterated if it is a class III device required by section 513(f) of the FFDCA to have an approved application for premarket approval in effect if the approved application is not in effect or the device is not otherwise exempt from the requirement. Because Defendants DARQUE TAN, LLC, SEGLER ENTERPRISES, LTD., and ROBBIE SEGLER'S Ergoline Beauty Angel Natural Collagen Stimulation Stand-up Beds are class III devices which do not have the required approved applications in effect, these devices are deemed adulterated pursuant to section 431.111(f)(1)(B) of the Texas Health & Safety Code. Defendants' use of such adulterated devices result in the introduction into commerce of adulterated devices. Defendants DARQUE TAN, LLC, SEGLER ENTERPRISES, LTD., and ROBBIE SEGLER, individually, have violated section 431.021(a) of the Texas Health & Safety Code which prohibits the introduction of adulterated devices into commerce and 431.021(c) which prohibits the receipt in commerce of any adulterated device.

**11.15**  Texas Health & Safety Code section 431.182(a) states that an advertisement of a device is false if it is false or misleading in any particular. Defendants DARQUE TAN, LLC, SEGLER ENTERPRISES, LTD., and ROBBIE SEGLER' S advertisements for the Ergoline Beauty Angel Natural collagen Stimulation Stand Up Beds are false or misleading because the FDA has not approved these devices for the intended uses for which they are advertised and

marketed.  In fact, the FDA has not approved these devices for any intended uses.  Therefore,

Defendants DARQUE TAN, LLC, SEGLER ENTERPRISES, LTD., and ROBBIE SEGLER' S

claims constitute false advertisements under Texas Health & Safety Code section 431.182(a) and

thus,  violate Texas Health & Safety Code section 431.021(f) which prohibits the dissemination

of any false advertisement.

### XII.  CONDITIONS PRECEDENT

      12.1  All conditions precedent to Plaintiff's right to recover and Defendants' liability

have occurred or have been waived.

### XIII.  APPLICATION FOR PERMANENT INJUNCTION

      13.1  Plaintiff requests that Defendants DARQUE TAN, LLC; SEGLER ENTERPRISES

LTD.; ROBBIE SEGLER, individually; TAN BIZ, LLC; MONICA JONES, individually; and

JASON JONES, individually, be cited according to law to appear and answer herein and that

upon final hearing a PERMANENT INJUNCTION be issued restraining and enjoining

Defendants individually and by their agents, servants, employees, and representatives from

making the representations, doing the acts, and engaging in the practices set out in the preceding

paragraphs as well as from making the following representations and doing the following acts

and engaging in the following practices in the pursuit and conduct of trade or commerce within

the State of Texas as follows:

      A.     Representing, marketing, promoting, or advertising, either expressly or by

                implication through any means, tanning devices or any services associated with

                the use of tanning devices as a means or method of reducing any health risks or

affecting any medical conditions;

**B.**     Representing, marketing, promoting, or advertising, either expressly or by implication through any means, tanning devices or any services associated with the use of tanning devices as a means or method to prevent or reduce the incidences or degree of any cancers;

**C.**     Representing, marketing, promoting, or advertising, either expressly or by implication through any means, tanning devices or any services associated with the use of tanning devices as a means or method by which consumers can increase their exposure to vitamin D or increase levels of vitamin D or any similar type claim;

**D.**     Representing, marketing, promoting, or advertising, either expressly or by implication through any means, tanning devices as anything other than devices to tan the skin;

**E.**     Representing, marketing, promoting, or advertising tanning devices without disclosing that the only use for tanning devices authorized by the FDA is to tan the skin;

**F.**     Representing, marketing, promoting, or advertising, either expressly or by implication through any means, that one can safely achieve a tan or safely tan through the use of tanning device;

**G.**     Using any internet search parameters, such as metatags, search and source codes, to link those searching for Vitamin D, Vitamin D production; cancer prevention,

breast cancer, or any other health related subject to Defendants' website(s);

**H.**     Misbranding devices in commerce;

**I.**     Including any statement, claim, research, or link to research or other websites on their website or in any other advertisement which implies, either directly or indirectly, that tanning devices are a means or method of reducing any health risks or affecting any medical conditions;

**J.**     Including any statement, claim, research, or link to research or other websites on their website or in any other advertisement which implies, either directly or indirectly, that tanning devices are a means or method to prevent or reduce the incidences or degree of any cancers;

**K.**     Including any statement, claim, research, or link to research or other websites on their website or in any other advertisement which implies, either directly or indirectly, that tanning devices are a means or method by which consumers can increase their exposure to vitamin D or increase levels of vitamin D;

**L.**     Including any statement, claim, research, or link to research or other websites on their website or in any other advertisement which implies, either directly or indirectly, that tanning devices are anything other than devices to tan the skin;

**M.**     Manufacturing food, including dietary supplements, within this state without being licensed with the Texas Department of State Health Services as a food manufacturer;

**N.**     Disseminating any false advertisements;

O.   Advertising or representing, through any means, the availability of any type of Vitamin D at any of their facilities unless it is clearly and conspicuously disclosed that the Vitamin D is obtained solely through the ingestion of a dietary supplement;

P.   Using any type of subterfuge or pretense in any advertisement or representation to mislead consumers into thinking tanning devices can be used for anything other than tanning of the skin;

Q.   Advertising or representing that red light therapy devices can be used by the general public if such devices have not been cleared for marketing by the FDA;

R.   Causing confusion as to the approval of a good by advertising, offering to sell, and selling red light therapy using a device that has not been cleared for marketing by the FDA;

S.   Advertising or representing that red light therapy devices used in commerce do not need to be cleared for marketing by the FDA;

T.   Introducing adulterated red light therapy devices into commerce by causing such devices to be used when not approved by FDA;

U.   Adulterating or causing the adulteration of a device in commerce;

V.   Receiving adulterated and/or misbranded devices in commerce;

W.   Failing to comply with all of the requirements for the operation of tanning facilities;

X.   Failing to comply with all of the labeling requirements for dietary supplements;

**Y.**   Representing that their business is approved by the Texas Department of State Health Services;

**Z.**   Representing that their business is approved by the Office of the Attorney General; and

**AA.**   Failing to provide written notice to any agent, servant, employee, affiliate, representative, franchisee, or licensee of the existence and terms of any injunction entered in this case, and of their duty to comply with the terms set forth herein.

### XIV. PRAYER

**14.1**  Plaintiff hereby incorporates paragraph 13.1, as if set forth in full.

**14.2**  Plaintiff State of Texas further respectfully prays that this Court:

**A.**  Adjudge against Defendants civil penalties in favor of Plaintiff State of Texas in the amount of up to $20,000 per violation of the DTPA;

**B.**  Adjudge against Defendants civil penalties in favor of Plaintiff State of Texas in the amount of up to $25,000 per day for each violation of the Texas Health & Safety Code (See TEX. HEALTH & SAFETY CODE §§ 145.0121(b), 431.0585(b));

**C.**  Order Defendants to pay Plaintiff State of Texas' reasonable attorney fees, investigative costs for the Office of the Attorney General and the Texas Department of State Health Services, court costs, witness fees, and other expenses pursuant to the TEX. GOV'T CODE § 402.006(c) and TEX. HEALTH & SAFETY CODE §§ 145.0121, 431.047(d).

**D.**  Order Defendants to pay both pre-judgment and post judgment interest on all awards of restitution, damages or civil penalties, as provided by law; and

*State v. Darque Tan, LLC, et al.*
**Plaintiff's Third Amended Original Petition**                    19

E.  Grant any further relief, at law or in equity, to which Plaintiff State of Texas may

show itself entitled.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID MATTAX
Acting Deputy Attorney General for Civil Litigation

TOMMY PRUD'HOMME
Chief, Consumer Protection Division


/s/ Jodie Scivetti
JODIE SCIVETTI
SBN 24058099
Assistant Attorney General
JOYCE WEIN ILIYA
SBN 00784319
Assistant Attorney General
Consumer Protection & Public Health Division
1412 Main Street, Suite 810
Dallas, Texas  75202
Tel: (214) 969-7639, ext. 8826
Fax: (214) 969-7615
jodie.scivetti@texasattorneygeneral.gov
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *State's Third Amended Original Petition and Application for Permanent Injunction* was electronically filed with the Clerk of Court and a true and correct copy was e-served and served by certified mail return receipt requested on Defendants by and through their attorney of record, Edward D. Burbach on this 14th day of March, 2012.  I hereby certify that the foregoing *State's Third Amended Original Petition and Application for Permanent Injunction* was served by certified mail return receipt requested on Jason and Monica Jones, by and through the Trustee of their bankruptcy estate, Johnny W. Thomas on this 14th day of March 2012.

/s/ Jodie Scivetti
Jodie Scivetti

Edward D. Burbach
Gardere Wynne Sewell LLP
600 Congress Avenue, Suite 3000
Austin, Texas 78701
CMRR # 7010 2780 0002 9120 1512

Johnny W. Thomas
Chapter 7 Trustee of the bankruptcy
estate of Jason and Monica Jones
1153 E. Commerce Street
San Antonio, Texas 78205
CMRR# 7010 2780 0002 9120 1475

*State v. Darque Tan, LLC, et al.*
**Plaintiff's Third Amended Original Petition**                          21